POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS SALOMON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| ATLAS LITHIUM CORPORATION, MARC FOGASSA, GUSTAVO AGUIAR, and ARELI NOGUEIRA, | |
| Defendants. | |

Plaintiff Douglas Salomon ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Atlas Lithium Corporation ("Atlas Lithium" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Atlas Lithium securities between March 25, 2022 and May 3, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Atlas Lithium is a mineral exploration and development company with lithium projects and exploration properties in other critical and battery minerals, including nickel, rare earths, graphite, and titanium. The Company, formerly known as Brazil Minerals, Inc. ("Brazil Minerals"), was founded by its Chief Executive

Officer ("CEO") Marc Fogassa ("Fogassa") and initially operated as a diamond and gold miner.  In 2013, Brazil Minerals went public via a reverse merger (the "Reverse Merger") that was underwritten by, among others, Hunter Wise Securities, LLC ("Hunter Wise"), of which Fogassa was a Managing Director at the time.

3.  Shortly after the Reverse Merger, Brazil Minerals conducted a stock promotion budgeted at $1.6 million in which the Company issued hard mailer promotion materials, entitled "Diamonds are an investor's best friend," to investors. In addition to touting the profitability of the diamond mining industry, the promotional materials projected that Brazil Minerals' stock price would reach $18.90 per share over the long term.  However, in May 2013, Company insiders began dumping a significant number of shares into the market.  Thereafter, contrary to the Company's positive representations, Brazil Minerals' stock fell approximately ***90%***[1] over the course of the year following the promotion.

4.  After generating just $1.4 million in revenue from 2013 to 2021, the Company pivoted its purported focus from diamonds to lithium and officially changed its name to Atlas Lithium in October 2022.  In connection with this transition, Atlas Lithium issued press releases to highlight, *inter alia*, the Company's purported success in lithium drilling and the nature of its mineral rights in Brazil. Hoping to capitalize on its new business model, Atlas Lithium conducted a second stock promotion in January 2023, engaging the bank EF Hutton to raise money for the Company leading up to a public offering of 675,000 shares priced at $6.00 per share (the "January 2023 Offering").

5.  On May 4, 2023, Bleecker Street Research ("Bleecker Street") published a report entitled "Atlas Lithium (ATLX): First Comes The Pump… Now Here Comes the Dump" (the "Bleecker Street Report"). The Bleecker Street Report

---

[1] All emphases included herein are added unless otherwise indicated.

described Atlas Lithium as a "pretender" and stated that "it resembles many of the characteristics of a pump and dump." The report alleged that Atlas Lithium's "predecessor company did a similar promotion before bagging retail investors"; that "Atlas Lithium's CEO was previously associated with Hunter Wise Securities, a broker fined $105 million for claiming to sell physical gold that it didn't have"; and that "[EF Hutton, a] similarly disastrous bank[,] handled ATLX's most recent offering and uplisting in early January."

6. On this news, Atlas Lithium's stock price fell $12.95 per share, or 43.34%, to close at $16.93 per share on May 4, 2023.

7. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated the success of its lithium mining and misrepresented the nature of its Brazilian mineral rights; (ii) in connection with these misrepresentations, Atlas Lithium conducted deceptive promotions to artificially inflate the value of the Company's stock; (iii) the foregoing conduct was designed to allow CEO Fogassa and other Company insiders to sell shares back into the market for a profit before the true nature of Atlas Lithium's business was revealed; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Pursuant to Atlas Lithium's most recently filed Quarterly Report with the SEC, as of May 15, 2023, there were 9,706,126 shares of the Company's common stock outstanding. Atlas Lithium's shares trade on the Nasdaq Capital Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands, of investors in Atlas Lithium's securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

12. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13. Plaintiff, as set forth in the attached Certification, acquired Atlas Lithium securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant Atlas Lithium is a Nevada corporation with principal executive offices located at Rua Bahia, 2463, Suite 205, Belo Horizonte, Minas Gerais, Brazil. Atlas Lithium's common stock trades in an efficient market on the NASDAQ under the ticker symbol "ATLX".

4

15.    Defendant Fogassa has served as the Company's CEO at all relevant times.

16.    Defendant Gustavo Aguiar ("Aguiar") has served as the Company's Chief Financial Officer at all relevant times.

17.    Defendant Areli Nogueira ("Nogueira") has served as the Company's Vice President of Mineral Exploration at all relevant times.

18.    Defendants Fogassa, Aguiar, and Nogueira are sometimes referred to herein as the "Individual Defendants."

19.    The Individual Defendants possessed the power and authority to control the contents of Atlas Lithium's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Atlas Lithium's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Atlas Lithium, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.    Atlas Lithium and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### <u>Background</u>

21.     Atlas Lithium is a mineral exploration and development company with lithium projects and exploration properties in other critical and battery minerals, including nickel, rare earths, graphite, and titanium.   The Company's purported current focus is on developing its hard-rock lithium project located in Minas Gerais State in Brazil and intends to produce and sell lithium concentrate.

### <u>Materially False and Misleading Statements Issued During the Class Period</u>

22.     The Class Period began on March 25, 2022, when the Company filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2021 (the "2021 10-K").  In providing an overview of the Company's business, the 2021 10-K stated, in relevant part:

> We are primarily focused on advancing and developing our hard-rock lithium project located in the state of Minas Gerais, Brazil, where some of our high-potential mineral rights are adjacent to or near large lithium deposits that belong to a large, publicly traded competitor. Our Minas Gerais Lithium Project is our largest endeavor and consists of 44 mineral rights spread over 45,456 acres (184 km[]) and predominantly located within the Brazilian Eastern Pegmatitic Province which has been surveyed by the Brazilian Geological Survey and is known for the presence of hard rock formations known as pegmatites which contain lithium-bearing minerals such as spodumene and petalite. In general, lithium derived from pegmatites is less costly to purify for uses in high technology applications than lithium obtained from brine. Such applications include the battery supply chain for electric vehicles ("EVs"), an area of expected high growth for the next several decades.
>
> ***We believe that we can materially increase our value by the acceleration of our exploratory work and quantification of our lithium mineralization. Our initial commercial goal is to be able to enter production of lithium-bearing concentrate, a product which is highly sought after in the battery supply chain for EVs***.
>
> We also have 100%-ownership of early-stage projects and properties in other minerals that are needed in the battery supply chain and high technology applications such as rare earths, titanium, nickel, and cobalt.

6

Our goal is to become "the Mineral Resources Company for the Green Energy Revolution". We believe that the shift from fossil fuels to battery power will yield long-term opportunities for us not only in lithium but also in such other minerals.

\*\*\*

**LITHIUM**

**Market**

Lithium is on the list of the 35 minerals considered critical to the economic and national security of the United States, as first published by the U.S. Department of the Interior on May 18, 2018. In June 2021, the U.S. Department of Energy published a report titled "National Blueprint for Lithium Batteries 2021-2030" (henceforth, the "NBLB Report") which was developed by the Federal Consortium for Advanced Batteries ("FCAB"), a collaboration by the U.S. Departments of Energy, Defense, Commerce, and State. According to the Report, one of the main goals of this U.S. government effort is to "secure U.S. access to raw materials for lithium batteries." In the NBLB Report, Ms. Jennifer M. Granholm, the U.S. Secretary of Energy, states: "*Lithium-based batteries power our daily lives from consumer electronics to national defense. They enable electrification of the transportation sector and provide stationary grid storage, critical to developing the clean-energy economy.*"

The NBLB Report summarizes as follows the U.S. government's views on the needs for lithium and the expected growth of the lithium battery market:

- **"A robust, secure, domestic industrial base for lithium-based batteries requires access to a reliable supply of raw, refined, and processed material inputs…"**

- **"The worldwide lithium battery market is expected to grow by a factor of 5 to 10 in the next decade."**

(Emphasis in original.)

23. Further, in discussing the Company's market opportunities, the 2021 10-K stated, in relevant part:

**Minas Gerais Lithium Project**

Our Minas Gerais Lithium Project currently encompasses 44 mineral rights spread over approximately 45,456 acres (184 km2). Several of our mineral rights are located adjacent to or near mineral rights that belong to a large publicly traded competitor company ("Competitor")

which has demonstrated through extensive drilling the presence of lithium deposits totaling over 20 million tons, according to its publicly-available filings.

\*\*\*

Our exploratory work to date in some mineral rights in our Minas Gerais Lithium Project, including trenching and drilling with subsequent geochemical analysis of samples, has determined the existence of hard rock pegmatites with lithium mineralization. Given the proximity to areas of economically significant lithium deposits from the Competitor, our technical experts believe that one or more areas of our Minas Gerais Lithium Project may also contain similar lithium deposits.

We are currently focused on expanding and accelerating our exploration program leading to the identification and quantitative measurement of our prospective lithium deposits. Our exploratory program at the Minas Gerais Lithium Project is supervised by two lithium experts which meet the "Qualified Persons" definition under Regulation S-K 1300.

24.    Appended to the 2021 10-K as an exhibit was a signed certification pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by Defendant Fogassa, attesting that "the information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.    On August 22, 2022, the Company issued a press release entitled "Brazil Minerals Substantially Increases the Size of its Main Lithium Exploration Area." The press release stated, in relevant part:

Brazil Minerals, Inc. [. . .] is pleased to announce that it has acquired four lithium mineral rights (the "Lithium Mineral Rights") totaling 3,811.23 hectares (~ 9,418 acres) owned by a group of six persons, all unrelated to the Company. In particular, Brazil Minerals acquired one mineral right which is immediately north and two mineral rights which are immediately south of one of its premier claims, the Neves Area ("Neves"), part of the Company's 100%-owned Minas Gerais Lithium Project. Brazil Minerals is currently drilling on Neves and has identified multiple hard rock pegmatites with attractive lithium concentrations; several of such pegmatic ore bodies continue to the north and south into the newly acquired mineral rights. These claims expand the Neves project area footprint from 67.50 hectares (~ 167 acres) to 2,683.90 hectares (~ 6,632 acres) or almost 40 times its previous surface area (please see the attached map). This is a transformative acquisition for two main reasons: a) it creates the possibility of operationally developing Neves into a producing lithium mine of significant size, and

b) the large additional area gives the Company the opportunity for increased lithium resources.

[Defendant] Fogassa [. . .] commented, "This highly significant transaction is the result of months of hard-fought negotiations as these lithium areas attracted interest from multiple companies. We were successful in large part for having developed a solid local reputation for quality execution in our exploration programs. The Neves expansion is strategically critical and immediately brings our overall Minas Gerais Lithium Project to the next level."

26.    On September 7, 2022, the Company issued a press release entitled "Brazil Minerals Files Initial Exploration Technical Report on its Neves Lithium Property." The press release stated, in relevant part:

Brazil Minerals, Inc. [. . .] is pleased to announce that it has filed with the Securities and Exchange Commission an initial exploration report prepared by SLR International Corporation for the Company's Neves property (the "SLR Report"), which is part of Brazil Minerals' 100%-owned Minas Gerais Lithium Project.

***

Brazil Minerals is very encouraged by the SLR Report and these latest results as the Company continues to systematically explore the potential of the original Neves area through a combination of geological mapping, surface trenching, and diamond drilling. The two pegmatite bodies that have been drill tested so far remain open at depth and in both directions along strike. Company geologists have also identified six more outcropping pegmatite bodies in the area which remain untested by drilling. Moreover, the three recently acquired mineral rights surrounding the original Neves area offer additional potential which has yet to be explored. The Company estimates that less than 5% of Neves has been drilled to date; the drilling program should soon be accelerated with the addition of a second drill rig.

**The SLR Report brings the necessary background and credibility to Brazil Minerals' lithium program. It also contributes greatly towards the Company's goal of uplisting its common stock to the Nasdaq Capital Market**. As commonly seen with exploration companies, Brazil Minerals anticipates forthcoming updates to the SLR Report as drilling continues at Neves, and as it commences exploring its broader portfolio of lithium mineral properties in the region.

[Defendant] Fogassa [. . .] added, "We have surpassed our expectation on the validation of our lithium project by a world-renowned and independent expert firm. Using very little capital, it has now been demonstrated that we have quality spodumene and that it can be

9

concentrated to a commercial lithium product. It is an exciting time for us, and we look forward to continued progress on the field and in other fronts."

27.    On November 2, 2022, Atlas Lithium issued a press release providing a Q3 2022 corporate update.  The press release quoted Defendant Fogossa, stating, in relevant part:

> "We are executing upon our flagship Minas Gerais Lithium Project with the continuation of our drilling program being our primary focus in the second half of 2022[.]" [. . .] "Our Neves Area, one of the 52 mineral rights that comprise this exploration project, has yielded very promising results for lithium mineralization with potential for future production of commercial-grade lithium concentrate. We also made several recent additions to our executive team that will be critical to our continued delineation of our mineral resources and development of our projects.

> "As part of our strategy to capitalize on the accelerated worldwide demand for battery minerals used in electric vehicles, we have begun discussions with large, global companies seeking to secure our lithium supply. Given Atlas Lithium owns the largest footprint of lithium areas in Brazil, we are uniquely positioned to establish Atlas Lithium as a leader in one of the world's premier regions for lithium[.]"

28.    On January 10, 2023, Atlas Lithium filed a prospectus on form 424B4 with the SEC in connection with the January 2023 Offering, which contained substantively similar descriptions of the Company's business overview and market opportunity as discussed, *supra*, in ¶¶ 22-23.

29.    On February 6, 2023, Atlas Lithium issued a press release providing a corporate update.  The press release quoted Defendant Fogossa, stating, in relevant part, "We are quickly progressing on our desired strategic roadmap," and "Our recent site visits at our flagship, 100%-owned lithium project were quite productive, allowing us to showcase our hard-rock lithium assets and ongoing drilling campaign. ***Our successful uplisting to Nasdaq and enhancement of our balance sheet allows us to continue to execute on our operational goals***."

10

30.    On March 30, 2023, Atlas Lithium filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2022 (the "2022 10-K"). The 2022 10-K contained substantively similar descriptions of the Company's business overview and market opportunity as discussed, *supra*, in ¶¶ 22-23.

31.    Appended to the 2022 10-K as exhibits were signed certifications pursuant to SOX by Defendants Fogassa and Aguiar, attesting that "the information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.    The statements referenced in ¶¶ 22-31 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company overstated the success of its lithium mining and misrepresented the nature of its Brazilian mineral rights; (ii) in connection with these misrepresentations, Atlas Lithium conducted deceptive promotions to artificially inflate the value of the Company's stock; (iii) the foregoing conduct was designed to allow CEO Fogassa and other Company insiders to sell shares back into the market for a profit before the true nature of Atlas Lithium's business was revealed; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## **The Truth Emerges**

33.    On May 4, 2023, Bleecker Street published the Bleecker Street Report, which stated, in relevant part:

> We are short shares of Atlas Lithium. We think it resembles many of the characteristics of a pump and dump. Ten years ago, its predecessor company did a similar promotion before bagging retail investors. Atlas

Lithium's CEO was previously associated with Hunter Wise Securities, a broker fined $105 million for claiming to sell physical gold that it didn't have. Hunter Wise raised funds for Atlas Lithium (then called Brazil Minerals). A similarly disastrous bank handled ATLX's most recent offering and uplisting in early January. Retail investors have bit hook, line, and sinker for the story, professing their hopes for a future acquisition. We share the other side of the story below.

- Atlas Lithium's CEO was previously a broker at a firm fined $105 million for misrepresenting that they had the physical gold they were selling.

- At the same time that he was working there, he was the CEO of Brazil Minerals, which is the predecessor to Atlas Lithium. Brazil Minerals used an infamous and now-barred stock promoter to promote its stock, then quickly turned around and did an offering into this stock promotion.

- Atlas Lithium's CEO did not disclose that he participated in this offering while working as a broker and was terminated in 2012, a year before the CFTC charges came down.

- After years of (unprofitably) mining for gold and diamonds in Brazil, while their CEO lived in Beverly Hills, California, Brazil Minerals changed its name to Atlas Lithium and began to focus on lithium mining.

- Atlas' "Proven or Inferred" Reserves are only 80,000 tons of Lithium Carbonate Equivalent (LCE), and they are contained in a formation that averages just 0.22% $Li2O$, well below the economic viability of 1%.

*\*\**

**The playbook for Atlas Lithium is almost exactly the same as Brazil Minerals. With Brazil Minerals, there was a reverse merger, then stock promotion, and then came the dump. With Atlas Lithium, there was a name and business change and stock promotion. And we will have to wait and see if this time is different.**

**Why We Think Atlas Lithium Is Set Up For A Similarly Drastic Decline**

Fogassa, after years of striking out in the precious metals sector, pivoted into Lithium in 2021. The company submitted an application with the Brazilian state mining agency in June 2021 to begin exploratory drilling. At this point, spot prices of Lithium Carbonate had nearly

12

tripled from the 2020 Covid low of 37,000 RMB/ton to 108,000 RMB ($15,706)

Lithium plays in subsurface formations can share a lot of similarities with gold mining. Proven reserves with concrete surface and mineral rights are purchased by large companies at a premium and developed over years. However, marginal plays are cheaper because exploratory geology still needs to be completed, and the value of the minerals in the formation is unknown and wildly variable.

***

**So Why Doesn't Atlas Lithium Share Their Reserves?**

In our view, the simple answer to this is that management doesn't want to disclose the numbers. So we acquired records from Brazil's Government agency (ANM) that manages mineral rights.

As verified in government records, Atlas' only completed research confirms that mining rights associated with the company are only 85,370 tons of 6% CIF ore, with an additional inferred 170,740 tons possible.

***

**Atlas Lithium Has Misrepresented The Nature of its Mineral Rights**

We were struck by the language used by Atlas Lithium throughout investor communications and SEC filings. The company refers to "Mineral Rights" in a context that leads one to infer that these rights are immutable, transferable and, most importantly: a tangible asset held by the company. This couldn't be further from the truth.

In the United States, Mineral Rights are generally associated with ownership of the land containing minerals, oils or other natural resources. These rights are usually permanent, transferable and represent an effectively permanent claim on the rights to exploit the resources. Brazil does not operate under this framework. All mineral rights in the nation are considered owned by the government. Mineral extraction and processing occur via a licensure and royalty scheme.

The way it works is as follows: A company interested in exploiting mineral and resource development first applies for a license to explore the feasibility of extraction. This license is for a three-year term and is granted by the National Mining Agency (ANM) on an auction or bid basis. Following the license issuance, the interested company must propose a research plan to study the resource. This includes a budget and scope for exploratory drilling, geological surveys and economic and environmental studies. Once the research and exploration study is

13

approved, the company must complete the study and submit results and an application to begin extraction.

The use of the land itself is an entirely separate issue, as landowners must negotiate with the mining company for surface rights following approval of the extraction.

Only after all of this is complete can actual mining begin. Again, the state owns the underlying mineral rights, and royalties must be paid in perpetuity to the Brazilian government. Only after reserves have been proven and Economic And Environmental Studies have been completed are the rights transferred to the company beyond the three-year research permit limit.

Atlas claims Lithium rights for two projects in Brazil: the Minas Gerais project and the Northeastern Brazil Project. A description of each from the company's website is shown below.

\*\*\*

**Atlas Lithium's technical document on its primary Lithium Mine highlights financial unviability**

The company applied for and was subsequently granted approval to complete a survey on the Minas Gerais play. The company proudly displays the technical report, completed in August of last year, on its website, but a closer look at the data further illustrates that this mine is likely worth very little.

\*\*\*

**Conclusion**

EF Hutton's second round of stock promotion looks a little different than the first round, but we think the result will be the same. Instead of Hunter Wise in 2013, they have EF Hutton now, who raised money for the company before its January uplisting. EF Hutton IPO's and deals have followed a remarkably similar trajectory. A low-float stock goes public, stock promotion happens, and then they tank. We have seen it play out many times over the last several years, and have written about several of these names.

Atlas Lithium is set up to massively disappoint the retail investors that have bought into this story. We see little likelihood that Atlas Lithium will get acquired. It is trading at a massive premium to other lithium miners, and what little Lithium it does have in Brazil is low-grade. As a result, we see substantial downside in the stock. Atlas Lithium is one of the most overvalued lithium miners in the world, and that has come in part because of an effective promotion organized by small banks.

14

Yesterday was just the beginning of a long downward spiral for Atlas Lithium shares.

34.     On this news, Atlas Lithium's stock price fell $12.95 per share, or 43.34%, to close at $16.93 per share on May 4, 2023.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Atlas Lithium securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Atlas Lithium or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Atlas Lithium;

- whether the Individual Defendants caused Atlas Lithium to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Atlas Lithium securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Atlas Lithium securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Atlas Lithium securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

17

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

45.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Atlas Lithium securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Atlas Lithium securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities

analysts and the media that were designed to influence the market for Atlas Lithium securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Atlas Lithium's finances and business prospects.

49.     By virtue of their positions at Atlas Lithium, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Atlas Lithium, the Individual Defendants had knowledge of the details of Atlas Lithium's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Atlas Lithium. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Atlas Lithium's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Atlas Lithium securities was artificially inflated throughout the Class

Period. In ignorance of the adverse facts concerning Atlas Lithium's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Atlas Lithium securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52.    During the Class Period, Atlas Lithium securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Atlas Lithium securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Atlas Lithium securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Atlas Lithium securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during

the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

55.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of Atlas Lithium, and conducted and participated, directly and indirectly, in the conduct of Atlas Lithium's business affairs. Because of their senior positions, they knew the adverse non-public information about Atlas Lithium's misstatement of income and expenses and false financial statements.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Atlas Lithium's financial condition and results of operations, and to correct promptly any public statements issued by Atlas Lithium which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Atlas Lithium disseminated in the marketplace during the Class Period concerning Atlas Lithium's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Atlas Lithium to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Atlas Lithium within the meaning of Section 20(a) of the Exchange Act.

In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Atlas Lithium securities.

59.    Each of the Individual Defendants, therefore, acted as a controlling person of Atlas Lithium. By reason of their senior management positions and/or being directors of Atlas Lithium, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Atlas Lithium to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Atlas Lithium and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Atlas Lithium.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 2, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*